UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANGELA FREY and MARK FREY,

    Plaintiffs,

  v.                                                                               Case No. 04-C-947

HARTFORD UNDERWRITERS INSURANCE CO.,

    Defendant.

---

### DECISION AND ORDER

---

       This case inquires into the common scenario presented when more than one policy of automobile insurance could potentially apply to a given set of facts. Joseph Frey was killed while a passenger in a car driven by Charlene Robinson. Her car was stopped at a red light when another vehicle rear-ended her car. Frey's survivors, the plaintiffs in this action, have recovered $100,000 (the policy limit) under a State Farm underinsured motorist policy issued to Charlene Robinson, the driver of the car in which Frey was a passenger. Frey himself also had $100,000 of underinsured motorist (UIM) coverage under a policy issued by defendant Hartford Insurance. When Frey's survivors sought payment under the Hartford policy, however, Hartford declined coverage. The plaintiffs brought suit in Winnebago County Circuit Court, and Hartford, a foreign corporation, removed the case to this court. Hartford has now moved for summary judgment and, for the reasons given below, I conclude the motion should be granted.

**ANALYSIS**

**1. The antistacking clause**

Hartford believes the coverage question is answered by reference to the so-called "antistacking" clause of its policy. "Stacking is a term used to denote the availability of more than one policy in the reimbursement of the losses of the insured. An antistacking clause provides that recovery is limited to the amount of coverage afforded by the policy with the highest limits." *Estate of Dorschner ex rel. Dorschner v. State Farm Mut. Auto. Ins. Co.,* 2001 WI App 117, 628 N.W.2d 414, 417 (Wis. Ct. App. 2001). Such clauses are explicitly authorized by Wisconsin statute:

> A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

Wis. Stat. § 632.32(5)(f). Hartford's antistacking clause echoes the statute's language:

> If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part C Section II (1) Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.[1]

In plain language, the antistacking clause says that no matter what other policies might be involved, the limits of the Hartford policy are not to be added (i.e., stacked) to the limits provided by any other policies for similar coverage. That is, the Hartford limit of $100,000 will remain *the* limit of recovery (at least as far as Hartford is concerned) regardless of whatever other coverage

---

[1]The policy was attached to the complaint, which itself is attached to the notice of removal. The underinsured coverage begins at page 13 of that attachment, which is section II of Part C, entitled "Underinsured Motorists Coverage." The antistacking provision is found in subpart 1 of the "Other Insurance" provision on page 16. The references to the policy made herein relate to that section, which extends through page 17 of the policy.

2

might be available. The insurer is thus saying to the insured, "we will pay you the limit of this type of coverage *only* in the event that no other insurer pays you that amount–we will not add on to any coverage you might receive elsewhere if that coverage adds up to $100,000." Thus, a person covered under the policy has guaranteed only that the specific coverage limit will be available, regardless of the source of that coverage; it has not guaranteed that it will receive payments under the Hartford policy.

Applied here, because State Farm's policy provided similar coverage–coverage for underinsured motorists–and because State Farm's payment was the same as Hartford's limit ($100,000), Hartford says it owes nothing. It has guaranteed only that the insured will receive $100,000, not that the insured will receive that amount from Hartford. The Hartford policy provides that "any recovery for damages under all such policies may equal but not exceed the highest applicable limit [i.e., $100,000] for any one vehicle under any insurance providing coverage on either a primary or excess basis." Put another way, the recovery is maxed out at $100,000 because the insured's recovery may not exceed the limit under either of the policies at issue, which is $100,000 in both cases. Thus, the plaintiffs cannot stack Hartford's coverage onto State Farm's.

The plaintiffs raise two arguments in opposition this construction of the antistacking clause. First, they suggest that Wisconsin's public policy forbids one insurer from reducing its coverage based on what another insurer pays. Second, they claim that even if the antistacking clause is allowable in the abstract, the language of Hartford's policy is ambiguous, which means the policy must be construed in favor of coverage. As to the public policy question, the plaintiffs' argument is contravened both by statute–Wis. Stat. § 632.32(5)(f)–and by case law. As already noted, the statute explicitly allows policies to provide that "the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles." Wis. Stat.

3

§ 632.32(5)(f). That is what has occurred here–Hartford is simply saying that its limits will not be added on top of limits created by other similar policies.

Case law is also in Hartford's favor. The court of appeals applied an antistacking clause in *Dorschner,* 628 N.W.2d 414, a case with similar facts:

> Dorschner died of injuries sustained in a two-car accident. Dorschner was a passenger in a car owned and operated by a relative. The accident was caused primarily by Gordon J. Servis, who was driving while intoxicated in an uninsured motor vehicle. The car in which Dorschner was riding was insured by Economy Preferred Insurance Company (Economy). The Economy car policy provided uninsured motorist (UM) coverage with $100,000 per person and $300,000 per accident limits of liability. As an occupant of the car, Dorschner was insured for UM coverage. Economy paid Dorschner's estate the full $100,000 limits of its coverage. The estate then sought to collect the $50,000 limits contained in a UM policy issued by State Farm Mutual Automobile Insurance Company (State Farm) and owned by Dorschner at the time of her death.

826 N.W.2d at 415. There, as the court noted, the secondary UM insurer was State Farm, whose UM limits were lower than Economy's. Because the State Farm policy had an antistacking clause providing that limits for coverage under the policy may not be added to limits provided by similar coverage, the court concluded that State Farm did not owe anything under its UM policy.

> Here, Dorschner has already received a $100,000 payment from Economy as the primary insurer. This amount is $50,000 more than the maximum coverage allowed under the State Farm policy. Application of the antistacking clause results in Dorschner receiving the highest coverage available under any single policy, which is exactly what her contract promised to do. It also means that Dorschner is not entitled to collect the $50,000 limit under the State Farm policy on top of the Economy policy.

*Id.* at 418.

The plaintiffs attempt to distinguish *Dorchner* on the grounds that it was an *un*insured motorist case rather than *under*insured, but that distinction is recognized neither by the cases nor the statute. *See, e.g., Remiszewski v. American Family Ins. Co.,* 2004 WI App 175, 687 N.W.2d 809, 817 (Wis. Ct. App. 2004)("the anti-stacking provision clearly conveys that regardless of the

4

number of policies held by a claimant, American Family's coverage will not exceed the UIM maximums."); *Hanson v. Prudential Property & Casualty Insurance Co.,* 591 N.W.2d 619 (Wis. Ct. App.1999)(applying antistacking clause in UIM context). The legislature did not specify that antistacking clauses were permissible in one context but not another; it simply stated that antistacking clauses were acceptable when "similar" policies also provided coverage, Wis. Stat. § 632.32(5)(f), and no argument is made that the UIM coverage already provided by State Farm is not "similar" to Hartford's UIM coverage. Plaintiffs also call into question the continued viability of *Dorchner* in light of the fact that the Wisconsin Supreme Court rejected its analytic approach in *Badger Mutual Ins. Co. v. Schmitz,* 2002 WI 98, 647 N.W.2d 223 (Wis. 2002). But *Badger* did not even discuss the issue presented here, namely, the general application and legality of antistacking clauses. In short, there is no indication that such clauses are against Wisconsin's public policy: the legislature has explicitly allowed them and Wisconsin courts have applied them routinely.

The plaintiffs also suggest that other decisions from Wisconsin's appellate courts make it clear that Hartford's coverage may not be reduced by payments from State Farm. But the cases on which it relies–principally, *Janssen v. State Farm Mut. Automobile Ins. Co.,*–were reducing clause cases rather than antistacking cases. 2002 WI App 72, 643 N.W.2d 857 (Wis. Ct. App. 2002). Reductions are only permissible under any of the enumerated sections of Wis. Stat. § 632.32(5)(i), but those subsections do not trump section (5)(f), the section applicable here and in *Dorschner*. To say that Hartford is "reducing" the plaintiffs' coverage is only true in the most superficial sense; in actuality, it is simply saying that it will not pay *on top of* other coverage if that other coverage meets or exceeds the limits the parties have agreed to. A refusal to add is not the same as subtraction.

5

**2. Contextual ambiguity**

The plaintiffs also contend that the policy was contextually ambiguous and that the ambiguity prevents Hartford's antistacking clause from controlling the outcome here. A provision in a policy of insurance may appear clear and unambiguous on its face but may nevertheless surrender that ostensible clarity when considered in the broader context of the policy as a whole. *Folkman v. Quamme,* 2003 WI 116, 665 N.W.2d 857, 867 (Wis. 2003). Review of Hartford's policy does not produce that sort of ambiguity, however. The plaintiff's first allegation of ambiguity relates to the fact that the policy's declarations page does not disclose the fact that coverage is limited to $100,000 regardless of how many other policies might provide coverage. But the absence of the antistacking clause in the declarations does not render the antistacking clause in the policy ambiguous; that is, there is nothing rendered unclear about the clause simply because it is not listed in the declarations page.

The plaintiffs also note that Joseph Frey never received a "step-by-step" guide to understanding his insurance. But again, the absence of additional information elsewhere in the policy (or here, outside of the policy) does not, by itself, render a clause contained within the policy ambiguous. Plaintiffs also highlight the fact that the Index is silent on antistacking, but the same analysis applies there as well.

The plaintiffs then take aim specifically at the language governing underinsured coverage, noting that the antistacking and reducing provisions of the policy are not specifically mentioned. To accept this argument, however, would be to require the policy to include antistacking language in virtually any paragraph where UIM coverage is also mentioned. Once again, the fact that antistacking is not mentioned in one place does not mean that its mention elsewhere in the policy

6

creates some kind of ambiguity. Indeed, as the defendant notes, such limitations on recoveries are routinely set forth in separate sections of insurance policies.

The plaintiffs also claim ambiguity results from the fact that antistacking is not mentioned in the coverage exclusions. The exclusions listed include such things as operation of the insured vehicle as a public livery vehicle or operation of a vehicle without permission. Those are the sorts of things that one normally finds as exclusions; they simply exclude coverage for particular factual situations and for other circumstances involving worker's comp or punitive damages. In contrast, the "other insurance" section of the policy (which is found on the next page) is the most reasonable place one would expect to find the antistacking language at issue here. The section discusses what happens when "other applicable insurance is available" and includes both the antistacking provision and a delineation of what coverage will be provided on a primary or excess basis. This does not create ambiguity. An antistacking clause is not properly considered an "exclusion," and the plaintiffs have offered no cases to suggest otherwise. The clause's appearance in the "other insurance" section is reasonable and, more to the point, its absence in the exclusions section does not *ipso facto* create any sort of ambiguity.

The plaintiffs also contend that the "limits of liability" section of the policy makes the antistacking provision ambiguous. The limits of liability section states that the limits shown in the declarations is "our maximum limit of liability for all damages." "This is the most we will pay regardless of the number of: 1. Insureds; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the accident." This section thus clarifies what Hartford's *maximum* payouts will be, regardless of what other circumstances might be involved. It thus does nothing to suggest that Hartford would *always* pay the maximum, regardless of what other insurance was available. Thus, because no reasonable construction of the clause would suggest otherwise, no

7

ambiguity results. Indeed, the frequent references to Hartford's "maximum" exposure would lead a reasonable insured to conclude that there must be situations in which the maximum will *not* be reached.

*Schmitz* is not to the contrary. In that case, a slim majority of the Wisconsin Supreme Court concluded that a reducing clause relating to UIM coverage, although conforming to the authorizing statutory language, was nevertheless ambiguous in light of other portions of the policy. "We believe that a reasonable insured would not realize or expect that the insured's recovery under the UIM provision of the policy would be reduced by the payments received from the underinsured motorist. Thus, in the context of the entire policy, the reducing clause is ambiguous and renders the UIM coverage illusory." 2002 WI 98, 647 N.W.2d at 226 (Wis. 2002). I first note that *Schmitz* is not binding here because it involved both a different type of clause (reducing) and a different policy (American Merchants). Naturally, one court's conclusion that a given policy is contextually ambiguous does not render another policy, issued by another insurer, ambiguous unless the same or similar language is used. That is not the case here.

That said, the more global analytical issues raised in *Schmitz* are not at issue here either. The majority in *Schmitz* found ambiguity largely because the policy contained a statement telling insureds that if they purchased underinsured motorist coverage, "[t]his coverage will pay the remainder of the bodily injury damages up to the limit of liability you select for underinsured motorists coverage." *Id.* at 237. That statement, the court found, "appears to tell a prospective insured that if he or she purchases UIM coverage, the coverage will pay the remainder of the bodily injury damages up to the limit of liability the person selects." *Id.* In contrast, there is no similar contradictory statement in the Hartford policy, and the plaintiff identifies nothing elsewhere in the policy that would make the antistacking provision contextually ambiguous. Thus, even applying

8

the *Schmitz* rationale to the Hartford policy, it is doubtful that a Wisconsin court would conclude that any ambiguity exists in this case.

Finally, the plaintiffs also find ambiguity in the "other insurance" section itself, which is where the antistacking clause is located. They suggest that subpart 1 (the antistacking clause) is inconsistent with subpart 2, which provides: "Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis." It is unclear, however, why plaintiffs believe the two clauses are inconsistent. The latter clause merely identifies which insurer is primary and which is excess; it does nothing to indicate that Hartford's own limits may never be contributed to by other insurers, i.e., that Hartford's limit may not be stacked onto other coverage.

In sum, none of the arguments raised by the plaintiffs indicate that the antistacking clause is rendered ambiguous by anything else in the policy (or on its face). And because the clause does not violate Wisconsin's public policy, it applies here in the way Hartford claims it does. Accordingly, summary judgment is properly granted to Hartford and the case is dismissed.

**SO ORDERED.**

Dated this __22nd__ day of November, 2005.

                                                          s/ William C. Griesbach
                                                          William C. Griesbach
                                                          United States District Judge